BERTHA CALLAGHAN *vs.* R. H. WHITE COMPANY.

Suffolk.   November 16, 1938. — June 29, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Negligence*, Swinging door, Store. *Evidence*, Relevancy; Opinion: expert.

Evidence, merely that one unit of a two-leaf door, hung on two spring hinges at the entrance to a toilet in a retail store, when released, closed more quickly and swung farther than the other and that there was rust on one of its hinges, did not warrant a finding of a defective condition of the hinge as the cause of injury to a customer struck by the more rapidly closing unit when it was released by another customer.

A question of an expert seeking an opinion which would be a mere conjecture on his part on the facts posited, and a question founded upon part only of the facts material to the issue, properly were excluded.

The proprietor of a store was under no obligation to a customer to change the obvious construction and method of using a swinging door leading to a toilet, and it was immaterial whether the construction of the doors was "good" in a certain year when the customer was injured by being struck by the door.

Tort. Writ in the Superior Court dated May 15, 1933.
A verdict for the defendant was ordered by *M. Morton, J.*
*M. Michelson,* (*W. Hadgi* with him,) for the plaintiff.

*P. C. Reardon,* (*C. C. Petersen* with him,) for the defendant.

Donahue, J. The plaintiff, while a customer in the store
of the defendant, was struck and injured by a swinging door
located between a large room, provided by the defendant
for the convenience of its customers, and a toilet compartment. Her action to recover damages for her injury was
tried before a jury in the Superior Court. The case comes
here on exceptions to the direction of a verdict for the defendant and to the exclusion of certain evidence offered by
the plaintiff.

The evidence at the trial is here briefly summarized. The
doorway between the large room and the toilet compartment was fitted with two swinging half doors which, when
closed, came together at the center of the doorway. Each
half door was fastened to the door frame by two spring
hinges and, on each, there was a coil spring about eight
inches long, one end of which was attached to the door and
the other to the door frame. The doors were four feet
nine inches high and, according to the testimony of the
plaintiff, about a foot and a half wide. There were spaces
between the top of the doors and the ceiling and between
the bottom of the doors and the floor.

The plaintiff waited in the large room near the doors
until another woman came out of the toilet compartment
and pushed outward the door at the plaintiff's right, and
then stood holding the door so that the whole doorway
was clear for the plaintiff to enter. The plaintiff then entered the toilet compartment pushing inward the door at
her left, and walked to her right, and was about a foot
beyond the door frame when the other woman released her
hold on the half door at the right and it swung across the
line of the door frame, striking the plaintiff in the face. The
plaintiff testified that the half door at the left, when released by her, "went a little bit beyond the door frame . . .
wavered for just a second at the door frame and stopped,"

and that the door at the right, when released by the other woman, "stayed there . . . for a second or so . . . started slowly and then came with a rush . . . [and] came beyond the door frame" and struck the plaintiff.  A companion of the plaintiff who was at the scene of the accident shortly after its occurrence testified that she noticed that the top hinge on the door at the right "was rusty," and that "she had seen rust on the hinge."

Since the plaintiff at the time of her injury was in a portion of the store provided for the use of customers (*Drennan* v. *Grady*, 167 Mass. 415; *Jacobsen* v. *Simons*, 217 Mass. 194; compare *McNamara* v. *MacLean*, 302 Mass. 428), the defendant was under the obligation to maintain the doors in a reasonably safe condition for her use.  *White* v. *Mugar*, 280 Mass. 73.  Swinging doors of the general type of those provided by the defendant are not uncommonly found in places of a similar character.  It must have been obvious to the plaintiff that the doors would be opened and closed by customers of the store without supervision by employees of the defendant.  The defendant was not obliged to make different arrangements as to the use of the doors since the conditions were open and obvious to an ordinarily intelligent person, *Kitchen* v. *Women's City Club of Boston*, 267 Mass. 229, 232; *McGuire* v. *Valley Arena Inc.* 299 Mass. 351, and the defendant would not be liable for an injury due solely to the negligence of other customers in the operation of the doors. *Smith* v. *Johnson*, 219 Mass. 142.  *Kelley* v. *Jordan Marsh Co.* 278 Mass. 101, 108.  *Promisel* v. *Hotels Statler Corp.* 286 Mass. 15, 17.  The evidence did not warrant a finding, in accordance with the plaintiff's contention, that a spring on the door that struck the plaintiff was defective.  The contention is based on the difference in the speed and distance of the swing of the two doors when released, and on the presence of rust on the upper hinge of the door at the right. The fact that the door that the other woman held open to allow the plaintiff an unimpeded entrance and then released went more quickly and further than the door used by the plaintiff, without anything to show how widely the plaintiff opened her door, did not warrant the finding of a de-

fective spring. There was testimony that rust was noticed on the upper hinge on the door at the right. There was nothing to indicate whether or not there was rust on the other three hinges of the two doors. The extent, degree or position of the rust on the upper hinge of the door at the right was not shown. A finding was not warranted that by reason of rust on the hinge in question it was defective and was the cause of the plaintiff's injury. A verdict for the defendant was rightly directed.

The exclusion of testimony offered during the direct examination of the plaintiff that there were no "door checks" on the door that struck the plaintiff does not appear to be error. The purpose of the offer was not stated. If the eventual purpose was to show that door checks were in use elsewhere, that would not be evidence of liability of the defendant. *Buzzell* v. *R. H. White Co.* 220 Mass. 129, 131, 132.

Three questions put to a witness called by the plaintiff who was qualified as an expert in building construction including swinging doors were excluded. He was asked to assume that the two doors in closing acted differently, in the manner described by the plaintiff, and that a hinge on the door at the right "was seen shortly after to be rusted," and to give his opinion as to what caused the door at the right to act as it did. The plaintiff offered to show that the witness would testify that the cause was "the corrosion of the hinge over a long period of time." The question was rightly excluded. There was nothing in the assumptions of fact given to the expert witness and nothing in the evidence to indicate the appearance, character or extent of the rust, or its position on the hinge. It is within the field of common knowledge that the mere presence of some rust on a hinge does not affect its operation. "A mere guess or conjecture by an expert witness in the form of a conclusion from basic facts that do not tend towards that conclusion any more than towards a contrary one" has no evidential value. *Ruschetti's Case*, 299 Mass. 426, 431. *Pastrick* v. *S. S. Kresge Co.* 288 Mass. 194, 196.

The expert witness was asked "would those doors such

as are described . . . [in the defendant's answers to inter-
rogatories] when in good condition swing a foot beyond
the door frame?" The question was excluded, and the
plaintiff offered to show that the answer would be in the
negative. It would seem that the distance of the swing
of such a door might depend somewhat upon the extent to
which it was opened and the manner in which it was re-
leased, as the judge intimated in excluding the question.
No further inquiry was made of the expert as to the extent
of swing of the door or as to its cause. The exclusion of
the question put was not error.

The judge excluded the question put to the expert whether
"it was good construction in 1931 to have doors of the kind
described . . . without doorchecks." The plaintiff's acci-
dent happened in that year. The defendant was not obliged
to provide the newest devices used in connection with such
doors, *Buzzell* v. *R. H. White Co.* 220 Mass. 129, 131, 132,
which were installed fifteen or twenty years prior to 1931.
The obligation of the defendant was to keep the doors in a
reasonably safe condition for the plaintiff's use. There was
no error in the exclusion of the question.

*Exceptions overruled.*